[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff seeks a dissolution of marriage, property distribution, alimony and other equitable relief deemed appropriate. The defendant, by way of answer, claims that the breakdown of the marriage was caused by the conduct of the plaintiff and, while he has also filed a cross complaint seeking the same relief, the Court grants the dissolution based on the complaint.
Factual Findings
The parties intermarried on July 31, 1970 at Dayton, Ohio, and the plaintiff has resided continuously in the state of Connecticut for at least twelve months next prior to the filing of her complaint. There were two children issue of the marriage, both of whom are now of majority age. Neither party is receiving financial assistance from a state or municipal governmental agency.
The husband is presently 49 years of age. He holds a B.S. degree (1967) in education and has one and one half years of law school. The wife, age 45, has one year of post high school education and has taken a few adult education courses offered by community colleges.
Until recently the wife had not worked outside of the home for many years. She stopped working shortly before the older child was born and he is now through college. Prior to the marriage she had done secretarial work.
The husband had substantial earnings until 1993 and the parties lived what could be termed a comfortable suburban life style with a home in Somers, Connecticut and a vacation home on Cape Cod.
They moved to Connecticut from Ohio in 1974 when the husband got a position as a buyer with the Casual Corner organization. Promotions came along and he became a divisional manager and then a vice president with either Casual Corner or its parent company — U.S. Shoe. He held the position of vice president from 1983 to 1986.
They bought a house in Somers in 1977 and a second house on Cape Cod in 1983.
In 1987 management changes took place at U.S. Shoe and he lost CT Page 2850 his job with that organization. In August 1987, he found employment with a firm in New York City (AMC) where he worked in, his field of purchasing clothing. From there he joined the Brooks Fashion Stores (also in New York City) and became a general manager at that organization in 1990. In 1993, after Brooks was taken over by new management, it went bankrupt and in July 1993, he was terminated. (He had a severance package of three months salary plus accrued vacation). The defendant husband has not worked since July 1993.
After he first found a job in New York, the parties sold their house on Cape Cod and bought a co-op apartment in New York City. It cost $117,000 and they put a mortgage of $90,000 on it. Eventually it was foreclosed (in January 1995). There is a claimed potential deficiency of approximately $50,000 on the mortgage.
In 1987, when the husband took his New York job, their, daughter was in the eighth grade and their son was a high school junior. Rather than relocate closer to the city it was agreed that he would stay in the apartment during the week and come home to Somers on the weekends, and that became the pattern of the parties. His job involved some overseas travel from time to time and he worked a full day while at the home office.
Because of the schedule, the wife managed the Somers household, attended to the needs of the children, paid most of the, bills including the mortgages, utilities, tuition payments and insurances. She saw to it that the husband had no weekend duties by keeping the lawn mowed, the house maintained, etc. She would pick him up at the train station in Windsor Locks on Fridays and take him to the station on Sunday for his return trip. Occasionally she would go to New York City during the week for a day or two, but the husband felt she did not do it with enough frequency.
By 1988, the husband was showing signs of wanting a change in his life and, in his words, became infatuated with a woman in New York. He began to question his affection for his wife. That platonic infatuation ended when the woman realized he wanted a more intense relationship than she felt was appropriate.
Since August 1992 he has been involved in an adulterous relationship with another woman (Cathy). It was at that time that he called his wife and told her he wasn't coming home and that he no longer had any feelings for her. In his wife's words, her world CT Page 2851 collapsed. She had no idea that anything was wrong in their marriage. That following Monday she took the train to New York and met with the defendant. She asked him if there was another woman and he denied it. She returned to Connecticut and kept hoping the marriage could be saved. (She even arranged for counselling.) For a period thereafter the husband would come home from time to time, but in February 1993, he finally told her there was another woman. Then, in January 1994, he decided to move to California with Cathy. Until that time he continued to live in the co-op, but once the wife became aware of Cathy, he told her it was not a good idea for her to come to the apartment (because of Cathy).
In February 1994, the husband and Cathy moved to California. They presently live in Anaheim Hills (a suburb of Los Angeles) in a single family home. As stated he has not worked since.
Other facts will be discussed as they may relate to the orders being entered.
The Court has carefully considered the provisions of General Statutes §§ 46b-81 and 46b-82 which set forth the criteria to be used in determining the distribution of assets and alimony. Those criteria are:
1. The length of the marriage: The parties married in 1970. The marriage is almost of 25 years duration and approximately 23 years before separation.
2. Cause for the dissolution: The Court does not ascribe any blame whatsoever to the wife. For whatever reason, whether it be a "mid-life crisis" as the husband once considered, or whatever triggered the change in his feelings for his wife, there was no credible evidence, none, that the wife ever did anything but attend to his needs to the best of her ability. He was a good wage earner but she did not abuse the income available to her. She was not extravagant. She was responsible in the way she paid the household bills, and provided for the needs of their children. The life style they had was commensurate with his position and earnings. She made the accommodations necessary in order to provide him with a comfortable and warm home away from work. The Court suggests it was no easier for her to live in Somers with the responsibility of instilling proper values to their children, and keeping a home for the family. It is not insignificant that the defendant was working in a career which gave him great personal satisfaction, at a job which he could feel passionately about (to use his words). This CT Page 2852 court does not accept the suggestion that he entered into his adulterous marriage destroying relationship because his wife did not understand his needs or appreciate the effect that living in New York City had on him. He did what he did because he wanted to and not because the plaintiff made him do it.
3. Age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each, and the opportunity of each to acquire future assets and income, and pursuant to § 46b-81, the contribution of each party in the acquisition, preservation or appreciation in value of their respective estates.
The husband is 49 years of age and the wife is 45. They are both in good health. The wife is working part-time as a sales clerk in a children's clothing store. Her net earnings are $135.00 weekly. She has little work experience and has a limited earning capacity. At this time she does not have health insurance. The husband has a considerably higher earning ability. While he probably would have difficulty in finding an executive position paying $200,000 per year, (as he had), he knows the clothing business and has a significantly higher earning capacity than the wife. While he has not found employment which he considers suitable, that is to say, a position he can feel "passionate" about, the Court finds it difficult to accept the claim that a management position cannot be found. Although he has no income now apparently his needs are being sufficiently met by Cathy. For example, he was able to fly to New York to run in the 1994 marathon. In short he appears to have the luxury of looking for a position without being desperate about it.
As to his earning capacity, he has always enjoyed a good income. His gross earnings in 1989 were $125,000; in 1990, $162,000; in 1991, $197,000; in 1992, $200,000; and in 1993 (a partial work year) he earned $185,000.
The parties principal assets include the jointly owned home in Somers valued at $168,000 subject to a $35,000 mortgage; a profit sharing plan with United Shoe which apparently has a fluctuating value based on stock market conditions. The last report (as of January 29, 1994) listed its value at $262,400. The defendant believes that, in his opinion, the present value is closer to $250,000; IRA's in the amount of $9465.00; Killington ski bonds in the amount of $6500. CT Page 2853
The major liability is the potential deficiency on the New York co-op apartment of approximately $50,000.
While the husband was the principal wage earner, the wife's contribution to maintaining the comfort and life style enjoyed by the defendant and her responsibility for being the primary care-giver for their children was every bit as significant as his.
After July 1993, when the husband left his job, the wife's primary source of income has been from the joint savings account of the parties, which at the time amounted to approximately $104,000. Both parties made withdrawals as needed for their living needs and the wife continued to pay household expenses, insurances, the mortgage on the Somers property and $1600 per month for college tuition. For a period of time she continued to make mortgage payments on the New York Co-op as well until eventually she was running out of money.
When the husband left for California in February 1994, the bank account had been depleted down to approximately $17,000 to $18,000 and a C.D. worth approximately $11,500. A tax refund for the year 1993 in the amount of $2900 was also received by the wife and she put the bank accounts, C.D. and tax refund into an account in her name. These funds have now been further depleted to approximately $1800.
The Court considers that it was the wife's due to draw on these funds to support herself pendente lite since she did not receive alimony pendente lite as such. She has also been working part-time, at least since early 1994 to earn additional income, however, as indicated earlier, her earning ability is limited, probably about $200 per week at best and she has been trying to find full time work, especially to get insurance benefits. She has been living frugally on the assets and income available to her.
With the foregoing factual background the Court enters the following orders.
The marriage is dissolved on the grounds of irretrievable breakdown.
Alimony: Although the defendant expressed his opinion that he does not like the idea of alimony, his attorney more realistically recognizes that some alimony is appropriate in this case. The practical problem is that based on the husband's earning capacity, CT Page 2854 which appears to reasonably be in the range of $60000 to $75000 at a minimum, he could reasonably be expected to pay $15000 per year for twelve to fifteen years (or approximately $180,000 to $225,000) at a minimum. The Court does not view this as a minimum alimony case and uses the foregoing computation merely as an illustrative example. Under the circumstances of this case, the Court believes the plaintiff is entitled to alimony which is not time limited. But given the fact that he has moved to California and seems disinclined to accept a job he considers beneath him, the likelihood that he would pay a reasonable alimony to his wife is problematic.
Therefore, the Court orders the husband to pay alimony to the wife in the amount of $1.00 per year. Said alimony shall terminate sooner upon the wife's death or remarriage. Cohabitation as defined in § 46b-86(b) shall trigger the provisions of said statute.
In making this order of alimony the Court has considered its orders concerning distribution of assets, and intends to maintain the ability to modify the alimony order if equitable considerations warrant it in the future. The Court retains jurisdiction for this purpose.
The defendant shall notify the plaintiff within fourteen days of commencing employment of his place of employment, job title and salary level.
Real Property: The defendant shall quit claim his interest in the jointly owned property at 181 Springfield Road in Somers to the plaintiff. The plaintiff shall assume responsibility for maintenance and mortgage on said property and shall hold the defendant harmless therefrom. If the defendant fails to quitclaim his interest within thirty days of this judgment, then said property shall be transferred to the plaintiff pursuant to § 46b-81(a).
Profit Sharing Plan: The parties have both asked the Court to order an immediate distribution of these funds, and are prepared to accept the tax consequences of doing so. This order is based on testimony that the terms and conditions of the plan permit distribution at this time. The Court will reserve jurisdiction to amend its judgment to equitably apportion the marital assets in the event the plan does not permit an immediate distribution.
The sum of $170,000 shall be distributed to the plaintiff. CT Page 2855
The balance shall be distributed to the defendant.
The parties shall be responsible for their proportionate share of taxes and/or penalties in connection with this order.
The defendant is ordered to, from his share of the proceeds from the profit sharing plan, satisfy the deficiency, if any, on the New York Co-op, or otherwise arrange to have the wife released from any liability thereon, and shall hold her harmless from said liability. The plaintiff shall prepare any Qualified Domestic Relations Order necessary to effectuate this order.
The Court be believes it is equitable for the defendant to be responsible for this obligation under all the circumstances of this case. The wife is not responsible for this debt being incurred.
Insurance: The husband shall name the wife as irrevocable beneficiary of one-half of any life insurance he presently has or that he obtains through his employment as long as his alimony obligation is in effect.
Miscellaneous Assets: The husband shall be entitled to keep the cash value of any life insurance policies on his life. He shall also keep the Killington ski bonds. The wife shall keep the IRA accounts in her possession. If said IRA accounts are not in the wife's name, they are ordered transferred to her.
Personal Property: By agreement of the parties the Court orders the following items of personal property to be given to the husband:
 His mother's coin collection and furniture Statutes which were his mothers Bird wood carvings His father's watches, and furniture from Pennsylvania Halcyon Days Enamels (sports items) His parents' photographs Office items from his New York apartment or work His father's tools A silver mug and other mugs belonging to the husband Shotgun cleaning supplies Christmas ornaments from New Jersey SAAB automobile
CT Page 2856
The plaintiff shall, upon reasonable notice, put the foregoing items in the garage for pick-up by the defendant.
The plaintiff shall store the items for up to three months, thereafter they may be stored outside of the plaintiff's home for an additional three months at the plaintiff's expense. If not picked-up by the defendant within six months, ownership of these items shall be with the plaintiff.
All other personal property in the Somers residence shall belong to the plaintiff. The husband shall keep any other personal property presently in his possession.
Other: Each party shall pay his or her own counsel fees and be responsible for the debts on their own financial affidavits, with the exception of the deficiency listed on the defendant's affidavit, which is the subject of a specific order herein.
Plaintiff's counsel shall prepare a judgment file with. thirty days, to be signed by defendant's counsel.
Klaczak, J.